Mr. Freeman, would you like to proceed? Yes. Thank you, Your Honor. May it please the Court. My name is Spencer Freeman. I represent the appellant Jami Hunting. I would like to reserve five minutes for rebuttal argument. Okay. Keep your eye on the clock and we'll try to help you. Will do. Thank you. The case before the Court falls squarely on the long-time well-known standards of summary judgment, whether there exists a genuine issue of a material fact from which a jury could return a verdict favorable to the non-moving party, drawing all reasonable inferences to that non-moving party. The Court's function at summary judgment is not to weigh the evidence, it's not to determine the truth. Those functions are reserved for the jury. In this case, the trial court erred in dismissing Ms. Hunting's claims of bad faith, Consumer Protection Act, and breach of contract based off these well-established standards. The trial court asserted its opinion as to the strength and credibility of the evidence. Now, Ms. Hunting submitted a claim to American Family pursuant to a business owner's policy for damages caused by some tenants. This policy was an all-risk policy. That means that all damages are covered by the policy unless there's a specific and clear express exclusion in the policy. Here, American Family wrongfully asserted two coverage exclusions. First, wear and tear, and second, negligent maintenance. In each instance, a review of the bulk of the damage asserted by Ms. Hunting establishes that neither exclusion applies. And it's so clear that neither exclusion applies that American Family's reliance on these exclusions was unreasonable and thus in bad faith. What about the limitation on when you can file suit? Sure, and looking at the breach of contract, which was dismissed by the court, the facts were clear. The policy of insurance. What's that? The policy of insurance had a two-year limitation in it against filing suit, didn't it? It did, but that two-year limitation, so we're clear, that two-year limitation only applies to the breach of contract claim. That does not apply to bad faith claims or Consumer Protection Act claims. But in going back and focusing on the bad faith claim, in the state of Washington, a denial of coverage without reasonable justification constitutes bad faith. We don't have to show malice or malintent. We just have to show that it's unreasonable. Whether an insurance company acted in bad faith is a question of fact, which means summary really here to Ms. Hunting, would lead a reasonable person to only conclude that the insurance company's decisions in denial of coverage was reasonable. Now, Ms. Hunting submitted really two types of categories of damages here. One is intentional damage and one is abuse of this property. In looking at the intentional damage, we know it's intentional by one of two ways. First, just the character of the damage itself, and second, the timing that the damage occurs. If I give some examples of the character of damage that shows it's intentional, you can look at this permanent marker on white closet doors, vast drain spouts on the outside of the house, repetitive knife marks on kitchen countertops, repetitive knife marks on the top of drawers, repetitive knife marks on kitchen cabinets, graffiti on the cabinets, towel hangers pulled from the wall, vast metal fireplace flue on the outside. With regard to timing, Ms. Hunting was in this home approximately several weeks prior to the tenants moving out when she served that termination notice. And not just parenthetically, she was threatened by the tenant that she would be sorry for having terminated the lease. She had an opportunity to view the state of the house. When she came back several weeks later when the tenants had moved out, which took her several days to get in because they improperly changed the security codes, and she was met with this rancid fish smell from fish being stuffed up into the dishwasher drain line, she observed a plethora of damage that had not been there before, including damage to the stovetop, damage to the oven doors, dents on walls, gouges on stairway banisters, drawings on walls, cut marks and scratch marks on walls. So, counsel, with respect, you're talking about the insurance aspects of this, are you not? Yes, the coverage. Why is not Judge Kelly's question determinative of that? In other words, if the statute of limitations has run, how then does she have a claim? I understand your point about the bad faith and so on. But this has what you're talking about has to do with bad faith of the tenants. No, where's the where's the bad faith of the insurance company? Because when you look at the exclusions that they apply, if they unreasonably apply those exclusions, then their denial was in bad faith, leading credence to our bad faith claims. And when you look at the wear and tear and what what case law do you side for that? That's a pretty extreme statement. I'd have to go back and look, it's it's I do know it's well settled in Washington. And in fact, when you look at the judge's ruling itself, she doesn't dismiss the bad faith claims based off of the based off the suit limitation provision. She only dismissed the breach of contract based off the suit limitation provision. She she dismisses the breach of contract is in her assessment. The bad faith, the the damages we're talking about resulted from an honest disagreement. She doesn't find it to have been unreasonable. And that perhaps I didn't state it well. I shifted from the insurance to the bad faith. That's what we've gone to. And what I'm what I'm you're saying that basically if there's any reasonable basis for bad faith, and I don't understand it that way. Well, that is, though, I would phrase it a little different. So I would say under Washington law. Yeah. What case or cases would you cite for the proposition that of an insurance company and in this case, a homeowner have a reasonable disagreement about what's covered? That's bad faith. No. So why would anybody be an insurance company in Washington? It's whether it's the way you're phrasing the question is a little off to me, because your question is whether or not if the if the disagreement is reasonable, then it's bad faith. That's not what I'm saying. What I'm saying is if the insurance company's denial, if their reliance on these provisions was unreasonable, that is bad faith. So, for instance, when you look at the wear and tear, if they're going to apply a wear and tear exclusion on intentional damage. Yeah. But how again, we're talking about a policy that you say covers this. And you display explained in some detail exactly what happened. In what way was the insurance company, what jury could find that the interaction between the insurance company and your client was unreasonable in responding to the issues that you talk about? Well, there's two ways to look at the bad faith. One is the investigation aspect of it, which I think is where your question goes. But we can't leave alone the fact that if you apply a exclusionary provision and you do so unreasonably, which you're assuming the answer. What I'm saying is when two people, let's assume they're both reasonable. Yeah. And one says, I believe the contract says X and the other one says, no, I think it says Y. OK, they don't agree. That's not bad faith. Agreed. OK, so isn't that what the judge did here? That's what she said. But whether or not this insurance company's application of these provisions was reasonable is an issue of fact. And that's an issue of fact that's left for a jury, especially when you have damages that are clearly intentional and aware and terror exclusion clearly can't apply to intentional damage. A negligent maintenance exclusion clearly can't apply to intentional damage. It's that is an unreasonable application. And if a jury were to look at this damage and say, yep, that's intentional, then they could look at the exclusions and go, it's unreasonable to rely on these exclusions. So the way you phrase the question is that, yeah, both parties have a reasonable interpretation of the statute, then you're right. It would just be a strict breach of contract. But what we're alleging is that what American family did was not a reasonable reliance on these exclusion exclusionary provisions, whether it's the wear and tear or the negligent maintenance exclusion. If you look at the negligent maintenance exclusion, what they define negligent maintenance isn't as in the policy. They define it as negligent housekeeping. Judge Smith asked you a very pertinent question. Sure. OK, so you disagree on whether it was a scratch or intentional or wear and tear. How do you resolve that? You go to court. You go to court. Right. Under the policy. And the policy says X and they didn't cover. And if the jury says, yeah, they're wrong. But in your situation. The time to file a suit against the insurance company lapsed, and so you're trying to bootstrap in by going around beyond behind the policy. But if the bad faith laws here in Washington statute of limitations is three years and you may look at it as bootstrapping, but it only applies if the insurance company's actions were in bad faith. And that's a decision for the jury to undertake. You're right. You go to court. But when the insurance company engaged in bad faith, those claims are still are still there, regardless of the breach of contract claim. And I understand that sometimes there's going to be some overlap, that the breach of contract and I'm almost out of time here, but the breach of contract may have the same facts supporting it. But it is the unreasonable reliance on these exclusions that constitutes this bad faith claim. And there's reasonable there's genuine issues and material fact about whether or not the insurance company unreasonably relied. If you go with your theory, Judge Smith's comment. Aren't you saying that any time you have a disagreement, it could be unreasonable and therefore you go to go around behind the policy and just file a claim in court for a bad faith? Well, I think that you have to have some facts that support your allegation, that that the reliance on these exclusionary provisions were unreasonable. I don't think you can just say we disagree. That's not sufficient. But isn't that the very thing that Judge Peckman dealt with? I mean, she had the facts as alleged, and it sounds like she just basically concluded there was no way that a reasonable jury could come to the conclusion that she would like it to. Isn't that right? That ultimately is what she did. And we're here to say that in all due respect, she was wrong. When you look at intentional damage in this home, neither one of these provisions in the policy can apply to intentional damage. And she didn't address that. But the jury needs to be able to determine whether this damage was intentional or not. And then from there, whether or not reliance on the exclusionary provisions applies. If if what you're saying is correct, then there would never be much difference between a bad faith case and a breach of contract case. But there is the law provides for a different cause of action and different relief there. And I'm going to say the balance of your time. Thank you very well. All right. Let's hear from Council for American Family. Mr. King, please. Oh, yes, Mr. King, yes, I do, your honor. I just wanted to make sure that I got myself unmuted and I had to get them out. There you go. Very well. And may it please the court. My name is Michael King. And along with my colleagues on the answering brief, I represent a defendant at Amelie American Family Mutual Insurance Company. And I plan to address the two principal issues that are presented by this appeal. But reversing the order that they were presented in the briefing by starting with the bad faith point and then turning to equitable estoppel, which is going to explain why the contract case can't go ahead. But turning into bad faith, I want to start with a point that was raised in the oral argument. And that is this timing notion, because you hear about how Miss Hunting, before she tells the tenants to get out of these problems, and then they are told to leave. And 30 days later, she gets into the house and oh, now she sees this plethora of damage, which is all arisen within that 30 day period. Here's the problem with that point. There is nothing in the record showing that this timing was ever brought to the attention of American family during the investigation and adjusting process, either in 2017 or in 2019. No evidence whatsoever. You can look at the depositions of the witnesses. You can look at the declarations. It was never brought to our attention during the two year process when we were adjusting. Indeed, this timing theory of bad faith isn't actually argued in the brief. They just leaven the record with the fact that, well, there was a threat and all of this damage was discovered to have occurred during the 30 day period. But they never actually assert, because they can't, because the record won't support it, that American family was notified of these facts until after, of course, the two year period ran. And then Mr. Thomas, when he changes his story, says, oh, well, then I brought this to the attention of Mr. Gomez. And by then it's too late. Now, concerning bad faith, Judge Smith, you asked a question about the way the law was being Because in Washington, the carrier can be wrong on the coverage determination, but they're not guilty of bad faith unless their judgment about the coverage was an unreasonable one. And here's the fundamental problem with their case. All they've got, as Judge Peckman said, is a difference of opinion. So you have the testimony of Mr. Thomas. You have the testimony of Mr. Frisbee, the husband who was a police officer and has some experience with vandalism cases. And they say that most of this ninety eight thousand dollars in damage, that was the number that was eventually arrived at when the law proof of loss was submitted in January of twenty nineteen. Their opinion is that most of this is vandalism. Well, our opinion arrived at through Mr. Gomez's investigation and through Mr. Foe's consideration of that investigation is that only eighteen hundred dollars worth is vandalism. And there's a twenty five hundred dollar deductible. And that means we're not going to cut you a check for your claim vandalism damages. Here's the problem with the roof. Their case stops with this difference of opinion. There is no testimony from Mr. Thomas or any other expert. And Mr. Thomas was certainly experienced enough. He could have offered this testimony. There is no testimony indicting the process by which we went about our investigation. And I think it's important to be reminded about what the core of that evidence is. And I would just refer the court to a couple of documents. I'll reread Mr. Gomez's report to Mr. Bowe. This is in twenty seventeen. His first report property loss, May twenty three, twenty seventeen. And it's in the excerpts of record at ten forty and ten forty one and ten forty two. And that's where he's reporting to Mr. Bowe. He's saying in general, the visible damages that would typically be associated with vandalism losses were not present. I mean, large holes in drywall, holes in doors, cabinets removed from walls, extensive water damage to flooring, theft of building components, et cetera. And then you look at Mr. Bowe's follow up to this and his review of this report and his note to the file about his discussion with Mr. Gomez. This is excerpt of record ten forty five. And what you see is Mr. Bowe applying the coverage for vandalism and thinking about the exclusions for wear and tear and inadequate maintenance. And he's actually bending over backwards. That's what's reflected there. And so it's decided, well, I think we do have some components that constitute vandalism, the fish and the drain and a couple of other things. So price goes out. Well, when they're priced out, it turns out that's only eighteen hundred dollars. And there is no evidence saying that pricing out is unreasonable. There is no indictment of this process. What we're missing is the classic declaration you expect to see in these cases, which you always have where the Mr. Thomas is of the world, say, and I'm experienced with adjusting. I know what the custom and practices are. And I'm looking at what went on here and how this company got to this conclusion was just unreasonable. It was unfounded. It was arbitrary. It was capricious. And here are the reasons why. One, two, three, four, five. We don't have any of that. That's why Judge Peckman came to the conclusion she did. She said, all we've got here. And she thoroughly reviewed the record. She thoroughly outlined it in her order. It is very comprehensive. This isn't some summary disposition. She said, all we've got here is an honest disagreement and an honest disagreement. A dispute about judgment calls doesn't get you a bad faith claim. And so if I could just. You're saying that when the report was provided and found there was a de minimis amount of vandalism, that the way that Ms. Hunter and her folks could have brought this to the status that your opposing counsel would like, you take it to a jury is to say, no, we disagree. Well, this is wrong. Instead of doing so, they didn't say anything. So basically, you had an amount that was put in an uncontroverted amount. And then the only question is, was there a reasonable disagreement? That doesn't that doesn't need to go to the jury. Is that correct? That's that's that's getting your there, Your Honor. Let me add just a couple more nuances to that. The fact that there's a disagreement doesn't get you to the jury automatically. The Washington law is clear on that. Cases are legion. We've cited three Washington Supreme Court cases from the 1980s into the 2000s. And there are many supporting Court of Appeals decisions applying this law. Just because there's a disagreement doesn't get you to the jury. Just because there's a difference of opinion doesn't get you to the jury. You've got to have evidence. And the burden of proof is on the plaintiff to come forward and to show that the insurance company's opinion is unreasonable. And what we're missing here, we've got the disagreement. We've got Mr. Thomas and Mr. Frisbee saying, oh, well, we think there was substantially more than $2,500 worth of damage. What we don't have here is the next step saying we indict the way the insurance company got to the point it did. It didn't follow proper customs and procedures. Its behavior was arbitrary and capricious. Here are the indications why we don't have that anywhere in this record. What we've really got, and I think Judge Kelly was hitting the proverbial nail on the head, what we've really got here is it's a contract claim. What they needed to do was sue within the two-year period and then prove up that we were wrong. And if they prove up that we're wrong, well, then they'd prevail, and we're going to have to write a check, the check that we refused to write because in our judgment, our reasonable judgment, we thought it was less than $2,500. So prove up your case. Well, there's the real nub of the problem, and that's what I want to turn to now, which is equitable estoppel. There was a two-year period. Now, Ms. Hunting at some point said, well, in 2017, I spoke to somebody at the insurance company, and I was told there was no statute of limitations. But when she went out and hired Mr. Thomas in 2018, and Mr. Thomas shows up in November of 2018, and he's a public adjuster, and he's doing all of this stuff in writing, and it's clear that, oh, we're going to have to go back into this. It's clear to American family that we're going to have to relook at things. Mr. Bowe is very careful. January of 2019, he sends the letter to Mr. Thomas saying, hey, just keep in mind there's a two-year period here. You've got to bring any lawsuit that might be brought within two years. And Mr. Thomas, in his deposition, was forthright. He acknowledged getting this document. He knew what it meant, and he forwarded it to his client. And there's no dispute that the clock was running, and the insured was objectively aware that the clock was running. Judge Layton said that. Judge Peckman agreed. There's really no dispute about this. So the clock is running. So what happens? What happens is the proof of loss is submitted, and American family, through Mr. Bowe, who is the adjuster on this case, and their briefing to the district court acknowledged Mr. Bowe is the one who's in charge here, not Gomez, the investigator. Mr. Bowe is the one who's in charge here. So he says in response, well, we need to get back out there and take another look. And that's allowed. We get back out there, Mr. Gomez. He takes another look. And that brings us to March 2019. And it's often been my experience that these cases, whether the record is 10,000 pages or 100 pages or 100,000 pages, they end up turning on a couple of documents. Well, the key documents here are Mr. Bowe's missive of March 5, and the response by Mr. Thomas, his email, very pejorative, very critical, and Mr. Bowe's follow-up of March 27. And they're absolutely clear. We have relooked at this matter. We're not moving off our opinion. We remain convinced that there's just $1,800 worth of vandalism, and you've got a $2,500 deductible. Now, this water damage thing, which is separate and apart, we're still waiting for something. You're now raising a business interruption loss. We'll look at that. But the property damage claim for vandalism, you're not past the deductible. We're not going to write you a check. And there's nothing open about the interactions here. There are no mixed signals being sent. It is crystal clear. We're done. And in fact, the emails that came out from Ms. Hunting's side after the close of Discovery, they finally produced these things, and you have the critical interchange between Mr. Thomas and Ms. Hunting in April, where Mr. Thomas says, and this is excerpt of record 995, Jammie, there will be no negotiations on your claim. So this is the time you have to decide whether or not you want to go ahead with a lawsuit. And she doesn't. I mean, all of it had to be done. Yes, Judge Kelly? Didn't they send something out that we're going to file a lawsuit in the next few days or the next few weeks? Yes, that was exactly what Ms. Hunting expressed back. She recognized. And so she says that I definitely want to move forward. This is on the same excerpt of record, page 995. I definitely want to move forward. I'm not going to allow them to win that easily. And then it's not filed. May 3 comes and goes. It's not filed. All they had to do was file a case to protect themselves. And then, then Mr. Thomas could have his punitive post May 3 interchange with Mr. Gomez, where he says, well, I didn't talk to Bo. I talked to Gomez and I brought to Mr. Gomez's attention. Well, what about if the timing of the damage is different? And he talks to his insured. And now his insured is telling him there's no indication that actually his insured had ever told him about this. His insured is saying, oh, yeah, there was a threat and 90% of the damage was after that threat. And he shares that with Mr. Gomez. And Mr. Gomez supposedly says, well, I'll take it back to American family and I'll take it back to Mr. Bo and we'll see what could happen. You know, if they just filed the lawsuit, they would have been protected on the contract side. This is a contract case. Maybe we got it wrong. They have a contract remedy. But under the contract, we have a protection. And there is nothing we affirmatively did. And we had to do it. We had to make some representation during the critical period before May 3 that induced Ms. Hunting to take a pass on filing a lawsuit. Open negotiations, mixed signals. There's none of that in this record. And equitable estoppel requires clear and convincing proof. There's clear and convincing proof here, all right. Our definitive statements in March from Mr. Bo, who's in charge, saying March 2019, we're not reopening. We're done. And Mr. Thomas tells Ms. Hunting exactly that. There's not going to be any further negotiations here. He got a suit. And for some reason, that wasn't done. So that means no contract claim. Our rights are to be enforced. And that takes us back to bad faith. And all you've got is exactly what Judge Peckman said. An honest disagreement about whether the vandalism exceeded the deductible. And if that's all you've got is an honest disagreement, there's no bad faith as a matter of law. And the Washington cases are clear on that too. And your honors, if there are no further questions, I thank the court for its time and attention. Thank you very much. Any other questions by my colleague? All right. Hearing none then. All right. Mr. Freeman, you have a little rebuttal time. I got to unmute myself. Thank you. So counsel's assertion that we've got to show that there's some procedural thing that occurred that was bad faith is wrong. That ignores the clear case law in Washington that says if the reliance on the exclusionary provision is not justified and it's unreasonable, that decision alone is bad faith. It doesn't matter what occurred up to the decision-making process. So to rely on the fact that there's no declarations that talk about the process or the protocols or any of that that American family went through is asking you to ignore what the law says, which is if the decision itself right then and there lacks reasonable justification, it's bad faith. And a jury should be allowed to determine whether or not, based off the character of this evidence, it was a reasonable justification. Now, your honor, counsel. Counsel, what is the best Washington case you have that matches the facts in this case about bad faith as you see it? The idea that you get to go to the jury. What's your best case? So I can't answer that off the top of my head, your honor, as far as strictly adhering to these facts where there's just the decision. But I can quote those cases in our brief, which this is the law. Again, with respect, I looked at your brief. I read the cases a little differently on that. But I guess what concerns me is, as I understand your construction of bad faith law, I don't know any insurance company would ever do business in the state of Washington. Because what you're saying is, if there's a disagreement about the way the policy is construed, you lose. You got a bad faith award. That could be ruinous to anybody. But I'm not saying that. It's got to be an unreasonable justification. And again, when you go back and you look at trying to assert a wear and tear exclusion to damage that was clearly intentionally caused, it lacks reason. And if the insurance company's decision and reliance lacks reason, that is the definition of bad faith here in the state of Washington. So when you go back to the, I want to also discuss something that opposing counsel stated, which was with regard to the documents that was sent, supposedly sent to Ms. Hunting, advising him of the two-year suit limitation provision, it is the only document sent by was also not sent to Ms. Hunting. It wasn't sent to her. The regulation here, the Washington Administrative Code, requires that to be sent to the claimant. It defines claimant as the insured or the insured's, quote, legal representative. Mr. Thomas, the public adjuster, was not her legal representative. Her agent, for sure, but legal representative is a lawyer. They didn't send it out. They also needed to send it out 30 days prior. So Ms. Hunting's reliance with regard to the collateral estoppel doesn't, isn't just Mr. Thomas's attempts to negotiate further with American Family at the beginning of May. It stems back to a conversation she had with an American Family agent, which is undisputed, that they told her there's no time limitation here. Okay, your time is up. Let me ask my colleagues whether either has additional questions for Mr. Freeman. All right. We thank both counsel for your argument in this case. The case of Hunting v. American Family Mutual Insurance Company is submitted. And we thank you both. I wish you a good day.
judges: Kelly, SMITH, FORREST